No. 23-5200

---

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

---

SIGMA CORPORATION

Defendant-Appellant,

v.

ISLAND INDUSTRIES INC. and R. GLENN SANDERS,

Plaintiffs-Appellees

---

Appeal from the United States District Court,
Western District of Tennessee, Western Division
No. 2:22-cv-02436-JPM-cgc – Jon P. McCalla, District Judge

---

**BRIEF OF APPELLANT
SIGMA CORPORATION**

E. Franklin Childress, Jr.
Kristine L. Roberts
BAKER, DONELSON, BEARMAN,
CALDWELL, AND BERKOWITZ, PC
165 Madison Avenue, Suite 2000
Memphis, TN 38103
(901) 526-2000
fchildress@bakerdonelson.com
klroberts@bakerdonelson.com

Roberto J. Kampfner
WHITE & CASE LLP
555 South Flower Street
Suite 2700
Los Angeles, CA  90071-2433
rkampfner@whitecase.com

Lucius B. Lau
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC  20005
(202) 626-3696
alau@whitecase.com

## CORPORATE DISCLOSURE

Pursuant to 6th Cir. R. 26.1, Sigma Corporation makes the following disclosures:

1.     Is Sigma Corporation a subsidiary or affiliate of a publicly owned corporation?

No.

2.     Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?

No.

## TABLE OF CONTENTS

STATEMENT OF JURISDICTION ................................................... 1

STATEMENT OF ISSUES................................................................. 1

STATEMENT OF THE CASE .......................................................... 2

    A.    Background.................................................................................. 2

    B.    Proceedings Before The Bankruptcy Court And The District Court............................................................................................ 6

SUMMARY OF THE ARGUMENT ............................................... 12

ARGUMENT................................................................................... 15

    A.    Standard of Review:  The Court Should Review This Case De Novo .......................................................................................... 15

    B.    Sigma Sufficiently Alleged That It Took Reasonable Measures To Protect Its Trade Secrets ......................................... 17

    C.    The General Bar On Indemnification Claims In False Claims Act Cases Does Not Apply In Circumstances Where Damages Are Sought Against Parties Who Did Not Violate The False Claims Act.................................................................. 32

CONCLUSION ............................................................................... 39

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ......................................................................... 16

*Bickerstaff v. Lucarelli*,
  830 F.3d 388 (6th Cir. 2016) ..................................................... passim

*Blue Yonder Group v. Kinaxis Inc.*,
  No. 3:20-CV-03636-K, 2021 U.S. Dist. LEXIS 159245 (N.D. Tex.
  July 21, 2021) ........................................................................... 18, 29

*Certain Underwriters at Lloyd's London v. Jupiter Managing Gen.
  Agency, Inc.*,
  No. 3:20-CV-01037, 2022 WL 1462757 (M.D. Tenn. May 9,
  2022) ............................................................................................ 22

*Directv, Inc. v. Treesh*,
  487 F.3d 471 (6th Cir. 2007) ................................................... 16, 31

*Farmers Edge Inc. v. Farmobile, LLC*,
  970 F.3d 1027 (8th Cir. 2020) ................................................. 25, 26

*First United Bank Ins. Sols. Inc. v. Inservices, LLC*,
  No. CIV-22-682-R, 2023 U.S. Dist. LEXIS 17605 (W.D. Okla.,
  Feb. 2, 2023) ............................................................................. 19, 29

*Gov't Emps. Ins. Co. v. Nealey*,
  262 F. Supp. 3d 153 (E.D. Pa. 2017) ............................................. 28

*Handy-Clay v. City of Memphis*,
  695 F.3d 531 (6th Cir. 2012) ................................................... 16, 19

*Harsco Corp. v. Piontek*,
  No. 3:07-0633, 2008 WL 686217 (M.D. Tenn. Mar. 5, 2008) .......... 23

*Houser v. Feldman*,
  569 F. Supp. 3d 216 (E.D. Pa. 2021) ............................................. 27

*HTS, Inc. v. Boley*,
   954 F. Supp. 2d 927 (D. Ariz. 2013) ...............................................23

*Lamorte Burns & Co. v. Walters*,
   167 N.J. 285 (2001) ...........................................................................25

*Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*,
   342 F.3d 714 (7th Cir. 2003) ......................................................18, 29

*Liion, LLC v. Vertiv Group Corp.*,
   No. 18 C 6133, 2019 U.S. Dist. LEXIS 45707 (N.D. Ill. Mar. 20,
   2019) ..........................................................................................18, 29

*Mortgages, Inc. v. U.S. Dist. Ct. for Dist. of Nev.*,
   934 F.2d 209 (9th Cir. 1991) ................................................... passim

*New Albany Tractor, Inc. v. Louisville Tractor, Inc.*,
   650 F.3d 1046 (6th Cir. 2011) ..........................................................16

*Niemi v. NHK Spring Co., Ltd.*,
   543 F.3d 294 (6th Cir. 2008) ...................................... 17, 18, 29, 32

*P.C. of Yonkers, Inc. v. Celebrations! the Party & Seasonal
   Superstore, L.L.C.*,
   No. 4-4554 (JAG), 2007 U.S. Dist. LEXIS 15216 (D.N.J. Mar. 2,
   2007) .................................................................................................25

*Phoenix Process Equip. Co. v. Cap. Equip. & Trading Corp.*,
   No. 3:16-CV-024-CHB, 2022 WL 4687025 (W.D. Ky. Sept. 30,
   2022) ...........................................................................................22, 24

*Ruckelshaus v. Monsanto Co.*,
   467 U.S. 986 (1984) ..........................................................................27

*Texas Indus., v. Radcliff Materials*,
   451 U.S. 630 (1981) ..........................................................................35

*Trans-Radial Sols., LLC v. Burlington Med., LLC*,
   No. 18-cv-656, 2019 U.S. Dist. LEXIS 131711 (E.D. Va. Aug. 5,
   2019) .................................................................................................23

*Underwater Storage, Inc. v. United States Rubber Co.*,
   371 F.2d 950 (D.C. Cir. 1966) .........................................................27

*United States ex rel. Battiata v. Puchalski*,
   906 F. Supp. 2d 451 (D.S.C. 2012) ................................................36

*United States ex rel. Madden v. General Dynamics Corp.*,
   4 F.3d 827 (9th Cir. 1993) ............................................................38

*United States ex rel. Mikes v. Straus*,
   931 F. Supp. 248 (S.D.N.Y. 1996) ................................................36

*United States ex rel. Miller v. Harbert*,
   505 F. Supp. 2d 20 (D.D.C. 2007) ................................................36

*United States ex rel. Rodriquez*,
   74 F. Supp. 763 (S.D.N.Y. 1947) ............................................36, 37

*United States ex rel. Scott v. Metro. Health Corp.*,
   No. 1:02-CV-485, 2005 U.S. Dist. LEXIS 35591 (W.D. Mich.
   Dec. 13, 2005) ..............................................................................36

*United States v. Chung*,
   659 F.3d 815 (9th Cir. 2011) ........................................................26

*United States v. Howley*,
   707 F.3d 575 (6th Cir. 2013) ........................................................26

*United States v. Shanshan Du*,
   570 F. App'x 490 (6th Cir. 2014) .............................................26, 32

*Weisbarth v. Geauga Park Dist.*,
   499 F.3d 538 (6th Cir. 2007) ........................................................16

*Wesley v. Campbell*,
   779 F.3d 421 (6th Cir. 2015) ........................................................15

*Zabit v. Brandometry, LLC*,
   540 F. Supp. 3d 412 (S.D.N.Y. 2021) ..........................................24

## STATUTES AND REGULATIONS

18 U.S.C. § 1836(b)(3)(B) ...............................................................33, 37

18 U.S.C. § 1836(b)(3)(C) ....................................................................33

18 U.S.C. § 1839(3)(A).........................................................................17

19 U.S.C. § 1673.................................................................................4

28 U.S.C. § 157(a) ..............................................................................1

28 U.S.C. § 1291.................................................................................1

28 U.S.C. § 1334.................................................................................1

Defend Trade Secrets Act,
　　18 U.S.C. § 1836(b) ...................................................................17, 37

New Jersey Trade Secrets Statute,
　　N.J. Stat. 56.15-1, *et seq.* ...................................................17, 33, 37

Tennessee Uniform Trade Secrets Act,
　　Tenn. Code Ann. § 47-25-1701, *et seq.* ...............................17, 33, 37

## ADMINISTRATIVE DETERMINATIONS

*Certain Carbon Steel Butt-Weld Pipe Fittings from the People's
　　Republic of China*,
　　57 Fed. Reg. 29,702 (Dep't of Commerce July 6, 1992).....................3

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

This appeal concerns a theft-of-trade-secrets complaint that was dismissed by the district court on a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. There are two issues associated with this appeal.

The first issue asks whether Sigma Corporation took "reasonable measures" to protect its trade secrets. Under Sixth Circuit law, there is no single definition or test for what constitutes "reasonable measures." By its detailed complaint, Sigma Corporation alleges that its list of suppliers of welded outlets is a trade secret because its suppliers, many of which are located in the People's Republic of China, are not commonly known. Sigma Corporation further alleges that it took reasonable measures to keep its trade secrets confidential by providing them only to trusted employees on a need-to-know basis and by relying on well-established fiduciary duties owed by employees to their employers under New Jersey law. Oral argument will assist the Court in understanding why Sigma Corporation sufficiently alleged that it took reasonable measures to protect this information.

The second issue concerns the general bar on indemnification that exists in False Claims Act cases. This Court has yet to opine on this bar. Nor has this Court opined whether this indemnification bar applies in circumstances where, as here, damages are sought against parties who did not violate the False Claims Act. Oral argument will assist the Court in resolving this question of first impression.

**STATEMENT OF JURISDICTION**

The district court possessed subject-matter jurisdiction pursuant to 28 U.S.C. § 1334 because the district court had original jurisdiction of the complaint filed by Sigma Corporation, which arose in and was related to the bankruptcy petition filed by Island Industries, Inc., a petition that was referred to the Bankruptcy Court for the Western District of Tennessee, Western Division pursuant to 28 U.S.C. § 157(a). This Court possesses appellate jurisdiction pursuant to 28 U.S.C. § 1291 because this is an appeal from a final decision issued by the U.S. District Court for the Western District of Tennessee. The notice of appeal was filed on March 8, 2023 and, as such, was filed in a timely manner.

**STATEMENT OF ISSUES**

1.  Whether it was proper for the district court to find that Sigma Corporation did not take "reasonable measures" to protect its trade secrets in the context of a Rule 12(b)(6) motion to dismiss.

2.  Whether the general bar on indemnification claims in False Claims Act cases applies in circumstances where damages are sought against parties who violated the Defense of Trade Secrets Act and are not alleged to be part of a scheme or conspiracy to violate the False Claims Act.

1

## STATEMENT OF THE CASE

### A.    Background

Sigma Corporation ("Sigma") is a New Jersey Corporation that
manufactures and imports pipe fittings and other products, including welded
outlets.  Welded outlets are used to attach pieces of pipe together in fire protection
systems.  Complaint, RE 37-1, Page ID # 786.

Island Industries, Inc. ("Island") is a Tennessee Corporation.  *Id.* at Page ID
# 787.  R. Glenn Sanders ("Sanders") resides in Memphis, Tennessee and is the
President, Chief Executive Officer, and principal owner of Island.  *Id.* at Page ID #
787.

In 2016, Defendants Island and Sanders "sought and obtained trade secrets
and confidential information from Tom Paquette, a former employee of Sigma, to
gain a competitive advantage in their business."  *Id.* at Page ID # 785.
Specifically:

> Defendants requested that Mr. Paquette provide Island
> with Sigma's confidential trade secrets and business
> information, including a list of its suppliers.  Sigma's
> suppliers of pipe fittings are not commonly known.
> Sigma's list of suppliers was a key element of Sigma's
> business.  Sigma invested significant time, energy, and
> money locating reliable high-quality suppliers and
> developing new products and proprietary quality
> assurance plans to ensure a high quality during
> production, and its relationships with those suppliers for
> these reasons is very secure and tight.  The producer and
> exporter of welded outlets worked exclusively for Sigma

> and did not [sell] these welded outlets to any other
> customer. Sigma keeps its list of suppliers confidential,
> as this business information has significant competitive
> value to Sigma.  At Defendants' insistence, Mr. Paquette
> disclosed Sigma's confidential trade secrets and business
> information to Defendants.

*Id.*

Island and Sanders "used Sigma's trade secrets and confidential business information to gain a competitive advantage against Sigma including, but not limited to, developing and maintaining a lawsuit against Sigma, alleging that Sigma had violated the False Claims Act . . . ."  *Id.*

On June 13, 2017, Island filed a lawsuit, as relator, under the False Claims Act ("FCA") in the U.S. District Court for the Central District of California.  *Id.* at Page ID # 787.  Island named Sigma as a defendant, along with other importers. The gravamen of Island's complaint was that Sigma (and the other defendants) imported welded outlets from the People's Republic of China ("China"), but failed to pay antidumping duties on those entries.  Island alleged that welded outlets were covered by an antidumping duty order entitled *Certain Carbon Steel Butt-Weld Pipe Fittings from the People's Republic of China*, 57 Fed. Reg. 29,702 (Dep't of Commerce July 6, 1992).

Antidumping duties are imposed on foreign merchandise that is sold in the United States if (1) the U.S. Department of Commerce ("Commerce") determines that "a class or kind of foreign merchandise is being, or is likely to be, sold in the

United States at less than its fair value" and (2) the U.S. International Trade Commission determines that an industry in the United States is (a) "materially injured" or "threatened with material injury;" or (b) "the establishment of an industry in the United States is materially retarded," by reason of imports of merchandise that is being, or is likely to be, sold in the United States at less than its fair value.  19 U.S.C. § 1673.

On July 10, 2019, Island filed an Amended Complaint.  Complaint, RE 37-1, Page ID # 788.  "In both the Initial Complaint and the Amended Complaint, Island stated that it obtained information regarding Sigma's suppliers from a former Sigma employee, but did not name the employee." *Id.*  "During discovery in the FCA Action, Sigma learned that the former employee in question was Tom Paquette.  Mr. Paquette worked for Sigma from 2003 to 2015." *Id.*

"On February 4, 2020, as part of the FCA Action, Island produced documents to Sigma containing communications between Mr. Paquette and Mr. Sanders, where Mr. Paquette provided Sigma's trade secrets (such as supplier lists) to Mr. Sanders at Mr. Sanders' request." *Id.*

"Mr. Sanders was deposed on February 12 and 13, 2020 in the FCA Action. During that deposition, Mr. Sanders testified that he had obtained Sigma's supplier information from Mr. Paquette and used it to bring the FCA Action." *Id.*

"Mr. Paquette was deposed by Sigma's counsel on February 28, 2020 in the FCA Action. Mr. Paquette testified that at Mr. Sanders' request, he provided Sigma's supplier information to Mr. Sanders." *Id.*

During discovery in the FCA Action, "Defendants disclosed Sigma's confidential suppliers to its competitors." *Id.* at Page ID # 786. This disclosure was in violation of the protective order in place in the FCA Action. "After disclosure, Sigma demanded that Defendants destroy all copies of five listed documents and reproduce them with the designation of 'confidential.' Defendants ignored that demand." *Id.* Indeed, "Island ignored Sigma's repeated requests to mark the documents 'confidential' to restrict their disclosure, and the documents remain disclosed to Sigma's competitors with no confidentiality protections to this day." *Id.* at Page ID # 788-789.

"A jury trial in the FCA Action took place in October 2021. The trial solely involved the question of whether Sigma violated the False Claims Act. The trial did not involve the question of whether Island or Mr. Sanders had stolen trade secrets from Sigma. Final judgment was entered against Sigma on February 8, 2022." *Id.* at Page ID # 789. The district court in the FCA Action entered judgment against Sigma in the amount of $24,256,638.09 in damages and $1,824,145.00 in civil monetary penalties. *Id.* at Page ID # 794. This judgment was then appealed to the Ninth Circuit.

By order dated March 27, 2023, the Ninth Circuit stayed its appeal due to pending cases before the Supreme Court and Federal Circuit that might bear upon the Ninth Circuit's disposition of the appeal of the judgment in the FCA Action. That appeal is currently stayed, and the panel has requested supplemental briefing.

**B.      Proceedings Before The Bankruptcy Court And The District Court**

On February 2, 2022, Island filed a petition with the Bankruptcy Court for the Western District of Tennessee, Western Division, seeking relief under Chapter 11 of the Bankruptcy Code. *In re Island Industries, Inc.*, Case No 22-20380-L (Bankr. W.D. Tenn.), Bankr. RE 1.

On May 9, 2022, Sigma filed its theft-of-trade-secrets complaint as an adversary proceeding in the Island bankruptcy. *Sigma Corp. v. Island Industries, Inc. and R. Glenn Sanders*, Adv. No. 22-00050 (Bankr. W.D. Tenn.), Adv. RE 1. On that same date, Sigma filed a motion for withdrawal of the reference with respect to its theft of trade-secrets case. Sigma's Motion to Withdraw the Reference, Adv. RE 3; Sigma's Motion to Withdraw the Reference, RE 1. On October 4, 2022, the district court granted Sigma's motion to withdraw the reference. Order Granting Motion to Withdraw the Reference, RE 23.

In addition to the allegations recited above in the Background section of this brief (and as relevant to this appeal), Sigma alleged in its complaint that "Sigma takes reasonable measures to keep its trade secrets and confidential business

information secret." Complaint, RE 37-1, Page ID # 789. Sigma further alleged that "Mr. Paquette owed an implicit and explicit fiduciary duty to Sigma to maintain the confidentiality of the trade secrets and confidential business information he learned during the course of his employment with Sigma, and that he provided to Island." *Id.* at Page ID # 791. Mr. Paquette "was not authorized to disclose Sigma's trade secrets and confidential business information" and he acknowledged that, "even while employed at Sigma, he did not have access to some of these trade secrets." *Id.*

Sigma alleged in its complaint that "Sigma's lists of suppliers and product considerations, particularly its foreign suppliers, are a trade secret." *Id.* at Page ID # 790. Sigma alleged that it "spent years researching suppliers, who are able to reliably produce good quality welded outlets and other products that Sigma purchases" and further alleged that "Sigma has also spent years developing new products and relationships with its suppliers." *Id.* These suppliers "are not commonly known" and, "in China, where many of the suppliers on the misappropriated list were located, many factories do not advertise or in any way indicate what they produce." *Id.* Sigma further alleged in its complaint that its trade secrets also included information "on the development of welded outlets for Sigma by Aegis Technologies, a competitor of Island . . . ." *Id.*

In its complaint, Sigma identified various ways that the actions of Island and Sanders harmed it: (1) "A competitor who obtains Sigma's trade secrets information would be able to learn which companies are reliable producers without investing the time, effort, and know how required for Sigma to develop that information[,]" *id.* at Page ID # 796; (2) "Every dollar awarded to Island in the FCA Action constitutes unjust enrichment as a result of misappropriated trade secrets[,]" *id.* at Page ID # 797; (3) "Defendants' possession of Sigma's trade secrets further harmed Sigma because Defendants have not paid a reasonable royalty for the disclosure or use of Sigma's trade secrets[,]" *id.*; (4) "Defendants' possession of Sigma's trade secrets allowed Defendants to unfairly compete with Sigma as both Sigma's competitor and supplier[,]" *id.*; (5) "Defendants' possession of Sigma's trade secrets allowed Defendants to interfere with Sigma's ongoing and future relationships with its suppliers and customers[,]" *id.*; and (6) "Defendants, as one of Sigma's suppliers, derived economic benefit from obtaining information about Sigma's other suppliers, to Sigma's detriment[,]" *id.*. Sigma noted that "[t]he harm caused by Defendants' theft is significant[,]" and specifically referenced the fact that the district court in the FCA Action "entered judgment against Sigma in the amount of $24,256,638.09 and civil monetary penalties in the amount of $1,824,145.00." *Id.* at Page ID # 786.

Importantly, although the damages to Sigma resulting from the judgment entered in the FCA Action are significant, they are by no means the only damages that Sigma alleges in the complaint. As noted above, Sigma also alleges that it suffered significant competitive disadvantages and damage to its relationships with its suppliers and customers. These damages were suffered by Sigma regardless of the outcome of the FCA Action.

By its complaint, Sigma further alleged that "Island's misappropriation of Sigma's trade secrets is not an isolated incident." *Id.* at Page ID # 793. Sigma alleged that another defendant in the False Claims Act lawsuit — Anvil International LLC ("Anvil") — "learned during discovery in the FCA Action that Island had misappropriated its trade secrets and confidential business information, including manufacturing and pricing information, customer lists, and other information, through an Anvil employee and used that information to bring the FCA Action against Anvil." *Id.* Subsequently, "a jury in the Western District of Tennessee found by a preponderance of the evidence that Island violated the federal Defend Trade Secrets Act and the Tennessee Uniform Trade Secrets Act" and "awarded a judgment of $1.5 million as a result of Island's misappropriation of Anvil's trade secrets." *Id.*

Subsequently, Island and Sanders filed a motion to dismiss for failure to state a claim upon which relief may be granted. Motion to Dismiss, RE 33-1.

9

Sigma responded to this motion, Sigma's Reply in Opposition to Defs.' Motion to Dismiss, RE 34-1, and Island and Sanders filed a reply, Defs.' Reply to Sigma's Resp. to Defs.' Motion to Dismiss, RE 33-2.

On February 28, 2023, the district court granted the motion to dismiss, with prejudice.  Order Granting Motion to Dismiss, RE 43.  As relevant to this appeal, the district court stated as follows.

First, the district court held that Sigma's "indemnification claims" are barred.  *Id.* at Page ID # 819.  By the phrase "indemnification claims," the district court referred to the judgment against Sigma in the False Claims Act case.  *Id.* Quoting from a Ninth Circuit decision, *Mortgages, Inc. v. U.S. Dist. Ct. for Dist. of Nev.*, 934 F.2d 209, 213 (9th Cir. 1991), the district court stated that "'Congress did not intend to create a right of action for contribution or indemnification under the FCA.'"  *Id.* at Page ID # 820 (quoting *Mortgages*, 934 F.2d at 213).  The district court stated that "Plaintiff's instant action is an impermissible end-run around this bar to indemnification under the FCA, which is the law in the Ninth Circuit and has been endorsed widely by district courts including courts in the Sixth Circuit."  *Id.* at Page ID # 820.  Explaining that "Plaintiff does not state a facially plausible claim for indemnification[,]" the district court stated that "the remainder of this opinion only addresses damages which could be considered independent, those that allegedly 'allowed Defendants to unfairly compete' and

'interfere with Sigma's ongoing and future relationships with suppliers and customers.'" *Id.* at Page ID # 821 (quoting Complaint, RE 37-1, Page ID # 797).

Second, the district court held that Sigma's complaint failed to state a claim for misappropriation of trade secrets. *Id.* at Page ID # 822. The district court acknowledged that Sigma raised theft-of-trade-secret claims under both federal and state law, but analyzed these claims together given that the elements of these laws are largely the same. *Id.* at Page ID # 822-823. The district court examined Sigma's allegation that "it made repeated requests to Defendants to mark certain documents confidential in the California case, to no avail, and that Defendants' failure to do so violated that action's Stipulated Protective Order." *Id.* at Page ID # 824. The district court noted that Sigma did not file a motion asserting a protective order violation. *Id.* "That Plaintiff did not even file a motion in the California case is an indication that it failed to take basic reasonable measures to protect its trade secrets." *Id.* The district court then examined Sigma's allegation that Mr. Paquette had a fiduciary duty not to disclose Sigma's trade secrets: "If a company has a trade secret it wishes to protect to preserve its value, mere reliance on a duty of loyalty from its employees is far from 'reasonable.'" *Id.* at Page ID # 825. From this, the district court concluded that Sigma "failed to make out a cognizable claim." *Id.*

11

## SUMMARY OF THE ARGUMENT

Because this appeal involves a Rule 12(b)(6) dismissal, this Court should review the judgment of the district court *de novo* and, in so doing, reverse that judgment for the following reasons.

***First***, based upon factual allegations that must be taken as true, the district court erred in finding that Sigma did not take "reasonable measures" to protect its trade secrets. The district court should not have made this finding in the context of a Rule 12(b)(6) motion to dismiss. This Court has held that the reasonableness of efforts to protect trade secrets is a question for the trier of fact, except where the evidentiary showing of reasonable efforts could not conceivably support a judgment in favor of the plaintiff. Consistent with this holding, numerous courts have held that the question of whether reasonable measures were undertaken should not be determined on a Rule 12(b)(6) motion. This Court has also recognized that there is not a single definition for what constitutes "reasonable measures."

The allegations made by Sigma more than satisfy the "plausibility" standard of *Iqbal* and are sufficient to raise a right to relief that is above the speculative level. As alleged, Sigma has at least one business dedicated to sourcing, manufacturing, and procuring products from overseas on behalf of customers. The foreign suppliers of these products are not commonly known. A competitor who

obtained Sigma's supplier lists (which are the trade secrets in question) would learn which foreign companies supply these products and do so reliably without investing the time and money that Sigma has invested to develop its relationships with these key suppliers.

The complaint further alleges that Mr. Paquette, the individual who wrongfully provided Sigma's trade secrets to Island, was a long-time trusted employee of Sigma and held senior-level positions such as Supply Chain Manager and Purchasing Manager; that, under New Jersey law, Mr. Paquette owed an implicit and explicit fiduciary duty to Sigma to maintain the confidentiality of trade secrets and other confidential information; that Sigma limited its employees' access to its trade secrets on a need-to-know basis; and, that Mr. Paquette had access to the trade secrets he needed to know to execute his management function, but, consistent with Sigma policy, did not have access to other trade secrets. Indeed, the complaint alleges — and Mr. Paquette conceded at deposition — that he did not have access to some of the trade secrets at issue. These allegations are more than sufficient to establish a plausible claim.

A natural and logical inference from these allegations is that Sigma has taken reasonable measures to protect its trade secrets. Keeping its supplier list confidential was absolutely crucial to Sigma's business. To protect this business, Sigma limited access to its trade secrets to management-level employees, such as

Mr. Paquette, and only disclosed trade secrets on a need-to-know basis.  The fact that a company places internal limits on employee access to trade secrets is viewed by many courts as an indication that the company has taken reasonable measures to protect its trade secrets.  Further, it was reasonable for Sigma to believe that its employees would not violate New Jersey law by disclosing confidential information to competitors in violation of their fiduciary duty.  These allegations, which must be accepted as true and viewed in the light most favorable to Sigma, are more than sufficient to satisfy the Rule 12(b)(6) standard.

*Second*, as an initial matter, the district court's ruling regarding the indemnification claims is premature.  The FCA judgment against Sigma remains on appeal in the Ninth Circuit and could well be overturned.  Sigma has suffered millions of dollars in damages arising from its defense of the FCA Action, including through the incurrence of a significant amount of attorneys' fees.  The district court cannot determine whether these damages are appropriate until the FCA Action is resolved.  The district court should not have decided the question of whether damage claims arising from the FCA Action are barred in the context of a Rule 12(b)(6) motion where the ultimate viability of the FCA Action judgment is unresolved.

In any event, a general bar on indemnification in False Claims Act cases does not apply in circumstances where damages are sought against parties who did

*not* violate the False Claims Act. This is a question of first impression for this Court.

The general bar on indemnification in False Claims Act cases has traditionally been limited to cases where a defendant seeks contribution or indemnification from a relator who has also violated the False Claims Act, such as a participant in the scheme to defraud. The purpose of this bar is to encourage relators to file cases, even if the relator himself has violated the False Claims Act. These policy considerations do not apply here because neither Island nor Sanders are alleged to have acted together with Sigma to violate the False Claims Act. Rather, Sigma alleges that these individuals have stolen Sigma's trade secrets and used that wrongfully-obtained information in a separate action against Sigma. The general bar on indemnification was not designed to protect relators who engage in wrongful conduct that has nothing to do with the False Claims Act. Indeed, expanding the general bar to a case such as this would have the effect of encouraging the theft of trade secrets. That is simply not good policy.

## ARGUMENT

### A.    Standard of Review:  The Court Should Review This Case De Novo

This Court reviews "de novo the district court's dismissal of a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Bickerstaff v. Lucarelli*, 830 F.3d 388, 395–96 (6th Cir. 2016) (citing *Wesley v. Campbell*, 779 F.3d 421,

428 (6th Cir. 2015)).  "To survive a motion to dismiss, a plaintiff must allege facts that state a claim to relief that is plausible on its face and that, if accepted as true, are sufficient to raise a right to relief above the speculative level."  *Id.* at 396 (quoting *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012) (internal quotation marks omitted)).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted).

This Court has stated that it is "required to 'construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff.'"  *Id.* (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)).  The Court "need not accept as true any 'conclusory legal allegations that do not include specific facts necessary to establish the cause of action.'"  *Id.* (quoting *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1050 (6th Cir. 2011)).  "The plaintiff's complaint instead 'must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory.'"  *Id.* (quoting *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 541 (6th Cir. 2007)).

16

**B.      Sigma Sufficiently Alleged That It Took Reasonable Measures To Protect Its Trade Secrets**

The Court should review the district court's dismissal of Sigma's complaint *de novo* (*i.e.*, without deference to the district court) and, when such a review is conducted, the Court should conclude that Sigma sufficiently alleged that it took reasonable measures to protect its trade secrets.

Sigma's complaint contained three counts, all of which asserted misappropriation of trade secrets. Count One concerned the federal Defend Trade Secrets Act, 18 U.S.C. § 1836(b) ("DTSA"). As relevant to this issue, the DTSA requires the owner of the trade secret to have "taken reasonable measures to keep such information secret . . . ." 18 U.S.C. § 1839(3)(A). Count Two concerned the New Jersey Trade Secrets Statute, N.J. Stat. 56.15-1, *et seq.* ("NTSS"). As relevant to this issue, the NTSS defines "trade secret" to mean information that is "the subject of efforts that are reasonable under the circumstances to maintain its secrecy." N.J. Stat. 56:15-2. Count Three concerned the Tennessee Uniform Trade Secrets Act, Tenn. Code Ann. § 47-25-1701, *et seq.* ("TUTSA"). As relevant to this issue, the TUTSA defines "trade secret" to mean information that is "the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Tenn. Code Ann. § 47-25-1702(4). In this manner, both the federal and the state statutes require the holder of the trade secrets to exercise "reasonable measures" or "reasonable" efforts to maintain the trade secret in question.

17

Most importantly, the question of whether an entity took "reasonable measures" or "reasonable" efforts to maintain its trade secrets is an inquiry ill-suited for anyone other than the trier of fact.  As this Court stated in *Niemi v. NHK Spring Co., Ltd.*, "except where the evidentiary showing of reasonable efforts could not conceivably support a judgment in favor of the plaintiff, the reasonableness of the efforts is a question for the trier of fact."  543 F.3d 294, 303 (6th Cir. 2008).  This theme is echoed by numerous courts.  *See, e.g.*, *Liion, LLC v. Vertiv Group Corp.*, No. 18 C 6133, 2019 U.S. Dist. LEXIS 45707, at *6 (N.D. Ill. Mar. 20, 2019) ("As to whether Plaintiff took sufficient steps to protect its trade secrets, that is also a factual inquiry that is unfitting at the motion-to-dismiss stage") (citation omitted); *Blue Yonder Group v. Kinaxis Inc.*, No. 3:20-CV-03636-K, 2021 U.S. Dist. LEXIS 159245, at *7 (N.D. Tex. July 21, 2021) ("What Blue Yonder asks the Court to do in the Motion to Dismiss is to make the factual determination that the alleged efforts to keep the information confidential were not reasonable.  Making such a factual determination is reserved for the trier of facts and should not be made under a Rule 12(b)(6) motion."); *Learning Curve Toys, Inc. v. PlayWood Toys, Inc.*, 342 F.3d 714, 725 (7th Cir. 2003) ("Whether the measures taken by a trade secret owner are sufficient to satisfy the Act's reasonableness standard ordinarily is a question of fact for the jury.  Indeed, we previously have recognized that only in an extreme case can what is a reasonable

18

precaution be determined [as a matter of law], because the answer depends on a balancing of costs and benefits that will vary from case to case") (citation and internal quotation marks omitted); *First United Bank Ins. Sols. Inc. v. Inservices, LLC*, No. CIV-22-682-R, 2023 U.S. Dist. LEXIS 17605, at *6 (W.D. Okla., Feb. 2, 2023) ("Generally, the issue of reasonable measures is one of fact for the jury"). This plethora of caselaw should lead the Court to conclude that the district court's dismissal was improper because the question of whether Sigma took "reasonable" or "reasonable measures" to protect its trade secrets should be reserved for the trier-of-fact and only the trier-of-fact.

To be sure, to survive a motion to dismiss, a plaintiff needs to allege facts that, if true, "state a claim to relief that is plausible on its face" and, "if accepted as true, are sufficient to raise a right to relief above the speculative level." *Bickerstaff*, 830 F.3d at 396 (quoting *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012)). That standard is readily met in this case.

Sigma alleges in its complaint that it "takes reasonable measures to keep its trade secrets and confidential business information secret." Complaint, RE 37-1, Page ID # 789. This allegation is supported by specific facts alleged in the complaint.

As an initial matter, Sigma's complaint is replete with allegations establishing that its supplier list was, indeed, a trade secret. It is clear from the

face of the complaint that Sigma took significant steps to develop relationships with its foreign suppliers and protect the identity those suppliers from disclosure: "Sigma's lists of suppliers and product considerations, particularly its foreign suppliers, are a trade secret." *Id.* at Page ID # 790.  These suppliers "are not commonly known." *Id.*  As an example, suppliers in China "do not advertise or in any way indicate what they produce," so that "a potential customer must go to China and conduct extensive, in-person research to determine which factories produce the needed products, the quality of those products, the reliability of the supplier, and other information vital for customers." *Id.*  "Sigma provided the suppliers with confidential technical information and trained workers to ensure the highest quality and necessary technical information to produce products to the high standards of U.S. customers." *Id.*  One of Sigma's businesses "is dedicated entirely to sourcing and procuring products from overseas on behalf of customers." *Id.* at Page ID # 791.  "This business is dependent on Sigma's competitive advantage in its knowledge of quality, reliable suppliers and the relationships it has with those suppliers." *Id.*

When these allegations are accepted as true and viewed in the light most favorable to Sigma — and when all reasonable inferences are made in favor of Sigma — it is apparent that Sigma has sufficiently alleged that it took reasonable measures to keep its supplier list secret.  If Sigma, in fact, has a business dedicated

to sourcing and procuring products from overseas on behalf of customers and if these suppliers, in fact, are not commonly known, then a natural and logical inference can be drawn that Sigma has taken reasonable measures to protect the identity of its foreign suppliers. Indeed, the counter-factual (*i.e.*, that Sigma did not take reasonable measures to protect its trade secret list of suppliers) defeats these allegations and renders them a nullity. Why? Because if Sigma had not taken reasonable measures to protect its list of suppliers then it would be unable to run a business dedicated entirely to sourcing and procuring products from abroad. As noted in the complaint: "A competitor who obtains Sigma's trade secrets information would be able to learn which companies are reliable, quality producers without investing the significant time and money Sigma has invested to develop its relationships with those key suppliers." *Id.* at Page ID # 790-791.

The fact that Sigma took reasonable measures to protect its trade secret supplier list is also reflected in the allegations concerning Mr. Paquette (*i.e.*, the former Sigma employee who provided Sanders with Sigma's supplier lists). As alleged in the complaint, Mr. Paquette was a long-term Sigma management-level employee. Complaint, RE 37-1, Page ID # 788. Indeed, Mr. Paquette worked for Sigma for twelve years. *Id.* First, Mr. Paquette was Sigma's Supply Chain Manager, responsible for inventory. *Id.* Later, Mr. Paquette served as Demand Forecasting Manager, where his responsibilities included forecasting demand so

that Sigma's suppliers could meet it. *Id.* Later, Mr. Paquette became Sigma's Purchasing Manager, where he managed several employees. *Id.* In short, Mr Paquette was not a low-level employee who had access to confidential information. He was a trusted, long-time employee with management-level duties.

Further, Sigma had a clear policy of providing confidential information to its employees on a "need to know" basis. Indeed, Sigma alleges in the complaint that Mr. Paquette "was not authorized to disclose Sigma's trade secrets and confidential business information" and that "he did not have access to some of these trade secrets." *Id.* at Page ID # 791. The fact that a company places internal limits on employee access to trade secrets (*i.e.*, limiting access on a "need to know" basis) is viewed by many courts as an indication that the company has taken reasonable measures to protect its trade secrets. *See Phoenix Process Equip. Co. v. Cap. Equip. & Trading Corp.*, No. 3:16-CV-024-CHB, 2022 WL 4687025, at *23–24 (W.D. Ky. Sept. 30, 2022) (holding that a reasonable juror could find that Phoenix acted reasonably in its efforts to protect its trade secrets where company took steps to protect its secrets that included limiting employee access to information on a need-to-know basis); *Certain Underwriters at Lloyd's London v. Jupiter Managing Gen. Agency, Inc.*, No. 3:20-CV-01037, 2022 WL 1462757, at *2 (M.D. Tenn. May 9, 2022) (finding that efforts to protect trade secrets that included "limiting access to the information on a 'need to know' basis" appear to satisfy the

22

requirement that company took reasonable measures); *Trans-Radial Sols., LLC v. Burlington Med., LLC*, No. 18-cv-656, 2019 U.S. Dist. LEXIS 131711, at *47 (E.D. Va. Aug. 5, 2019) (allegations that the plaintiff had "restricted access to its alleged trade secrets and that it only disclosed such secrets to Defendants on a need-to-know basis" were "sufficient to state the existence of a trade secret at the pleading stage"); *HTS, Inc. v. Boley*, 954 F. Supp. 2d 927, 944 (D. Ariz. 2013) (allegations that only a limited number of employees had access to trade secrets sufficient to overcome a motion to dismiss). The fact that Mr. Paquette would have needed access to some aspects of the supplier list to discharge his management-level employment duties, was "not authorized" to disclose Sigma's trade secrets and did not have access to other confidential information not required to perform his duties is sufficient to survive a Rule 12(b)(6) motion. *Accord Harsco Corp. v. Piontek*, No. 3:07-0633, 2008 WL 686217, at *8, *10 (M.D. Tenn. Mar. 5, 2008) (finding that Harsco made "efforts reasonable under the circumstances" to maintain its trade secrets where those efforts included a code of conduct "to keep all aspects of its rotary serrator operation secret").

Contrary to the above-cited cases, the district court appears to suggest that, in order to take reasonable measures to protect its trade secrets, Sigma needed to have, at a minimum, a confidentiality agreement in effect. Order Granting Motion to Dismiss, RE 43, Page ID # 825. The district court is incorrect. The absence of a

23

confidentiality agreement does not mean that a trade secret owner has failed to take reasonable steps to protect its secrets.  *See Phoenix Process*, 2022 WL 4687025, at *23 (addressing argument that trade secret owner did not have a confidentiality agreement in place:  "This alone does not definitively prove that Phoenix failed to adequately protect its alleged trade secrets").  The cases relied upon by the district court do not support its reasoning.

It is true that there were confidentiality agreements in *Zabit v. Brandometry, LLC*, 540 F. Supp. 3d 412 (S.D.N.Y. 2021), but the trade secret owner had disclosed the algorithm in question to several individuals and entities without confidentiality agreements (or other instructions to keep the algorithm confidential), and had licensed the algorithm without requirement to keep the algorithm confidential.  *Id.* at 424–25.  From these facts, the *Zabit* Court concluded:  "Courts regularly deny trade secret protection if the owner voluntarily discloses the alleged secret."  *Id.* at 425.  That is not the case here.

Sigma also alleged in its complaint that "Mr. Paquette owed an implicit and explicit fiduciary duty to Sigma to maintain the confidentiality of the trade secrets and confidential business information he learned during the course of his employment with Sigma, and that he provided to Island."  Complaint, RE 37-1, Page ID # 791.  "The employee's common law duty also precludes him from disclosing trade secrets or confidential information of his employer, *even after his*

24

*employment has ended*." *P.C. of Yonkers, Inc. v. Celebrations! the Party & Seasonal Superstore, L.L.C.*, No. 4-4554 (JAG), 2007 U.S. Dist. LEXIS 15216, at *39–40 (D.N.J. Mar. 2, 2007) (citation omitted) (emphasis in original). Similarly, "an agent is subject to a duty to the principal not to use or to communicate information confidentially given him by the principal or acquired by him during the course of or on account of his agency or in violation of his duties as agent, in competition with or to the injury of the principal[,]" even without any agreement. *Lamorte Burns & Co. v. Walters*, 167 N.J. 285, 300-01 (2001) (quotation omitted).  Mr. Paquette worked in Sigma's New Jersey offices and Sigma is a New Jersey corporation.  Under the circumstances, Mr. Paquette had a fiduciary duty to keep Sigma's trade secrets confidential, and it was reasonable for Sigma to rely on those fiduciary duties as part of its efforts to protect its trade secrets.

The district court relied on *Farmers Edge Inc. v. Farmobile, LLC*, 970 F.3d 1027, 1033 (8th Cir. 2020), to refute Sigma's fiduciary duty argument, faulting Sigma for not "do[ing] more to protect . . . [its] asset."  Order Granting Motion to Dismiss, RE 43, Page ID # 825.  However, *Farmers Edge* is distinguishable because that case involved *third-party disclosure* of the trade secret (and did not involve a case, like here, involving a former employee who had an duty of loyalty to his former employer).  In *Farmer's Edge*, plaintiff shared the information with a

25

third-party contractor without a confidentiality agreement and without other policies or practices for safeguarding secrets.  970 F.3d at 1033.

Importantly, "[t]here is not a single definition for what constitutes 'reasonable measures,' though this Court has looked to physical security measures at facilities and confidentiality agreements relating to sensitive information . . . . The statute does not require a particular technology to be kept 'under lock and key' if 'other security measures make such a step unnecessary.'" *United States v. Shanshan Du*, 570 F. App'x 490, 500 (6th Cir. 2014) (quoting *United States v. Howley*, 707 F.3d 575, 579 (6th Cir. 2013) (citing *United States v. Chung*, 659 F.3d 815, 825–26 (9th Cir. 2011) (noting that "limiting access to a trade secret on a 'need to know basis' and controlling plant access" may constitute reasonable measures)).  Thus, this Court approaches the reasonable measures standard with fluidity.  No one type of security measure is dispositive or otherwise a "gold standard," which is why this issue is not suitable for disposition on a motion to dismiss.

The district court also reasoned that Sigma's complaint should be dismissed because it did not take sufficient action to protect its trade secrets in the FCA Action.  This reasoning is based on a misunderstanding of the facts and a misapplication of the law and cannot survive *de novo* review.

26

*First*, the district court justified its dismissal by stating that "[t]he fact that information was filed publicly, as opposed to having been filed under seal, may indicate that a party did not take reasonable measures to protect its trade secrets." Order Granting Motion to Dismiss, RE 43, Page ID # 824. This point is misplaced because Sigma did not publicly disclose its trade secrets; rather, those trade secrets were wrongfully disclosed by Island in the FCA Action. Although disclosure of a trade secret by the trade-secret owner extinguishes the trade secret and the owner's property rights therein, disclosure by a misappropriating entity does not. *Compare Houser v. Feldman*, 569 F. Supp. 3d 216, 228 (E.D. Pa. 2021) (disclosure made by defendant, not by trade secret owner: "where a disclosure is not by the trade secrets owner's own actions and would in and of itself constitute an actionable misappropriation, the disclosure does not bar recovery *vis a vis* the wrongdoer or an individual or entity which knew of the wrongdoer's misdeeds"), *with Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984) ("*If an individual discloses his trade secret to others* who are under no obligation to protect the confidentiality of the information, or otherwise publicly discloses the secret, his property right is extinguished.") (emphasis added); *see also Underwater Storage, Inc. v. United States Rubber Co.*, 371 F.2d 950, 954 (D.C. Cir. 1966) ("We do not believe that a misappropriator or his privies can 'baptize' their wrongful actions by general publication of the secret."). The district court erred in not appreciating this

27

important difference.  It would be contrary to public policy to allow a

misappropriating party to evade liability by publicly disclosing a trade secret.

The district court also relied upon *Gov't Emps. Ins. Co. v. Nealey*, 262 F.

Supp. 3d 153 (E.D. Pa. 2017) ("*GEICO*"), but that case does not support the

district court's conclusions.  In *GEICO*, the court found that plaintiff failed to state

claim under DTSA because the plaintiff disclosed its *own* trade secrets *multiple*

*times* without precaution, which is not the case here.  Specifically, the *GEICO*

plaintiff (1) disclosed information comprising its alleged trade secret in the course

of litigation as a means of justifying subject matter jurisdiction in a motion to

transfer; (2) disclosed the trade secret content in the course of discovery without

properly designating the content as "confidential" or "highly confidential" in

compliance with the protective order; (3) failed to otherwise take any steps to limit

its disclosure (e.g., by entering into a private agreement with opposing counsel

who received the content); and (4) failed to follow local court rules for filing the

content under seal at the time of disclosure.  *Id.* at 168–72.  By contrast, Island,

*not* Sigma, disclosed Sigma's supplier information (knowing that it was

information that could only have been obtained by a Sigma employee with access

to the information) and without ever asking Sigma if it should be stamped as

confidential.  Further, Island refused to take any steps to designate the information

as confidential after Sigma repeatedly asked it to do so, in violation of the protective order.

**Second**, the district court penalized Sigma for not doing enough to protect its trade secrets once they had been disclosed, stating that Sigma "had recourse in the California Case to assert a protective order violation, including seeking sanctions against the Defendants."  Order Granting Motion to Dismiss, RE 43, Page ID # 824.  The district court further stated that Sigma's failure to file a motion in the California with respect to the protective order "is an indication that it failed to take basic reasonable measures to protect its trade secrets."  *Id.*  These points fail for numerous reasons.

Most importantly, whether Sigma did enough to protect its trade secrets is a question for the trier of fact, not the district court in the context of a Rule 12(b)(6) motion to dismiss.  *Niemi*, 543 F.3d at 303; *Liion*, 2019 U.S. Dist. LEXIS 45707, at *6; *Blue Yonder*, 2021 U.S. Dist. LEXIS 159245, at *7;  *Learning Curve*, 342 F.3d at 725; *First United Bank*, 2023 U.S. Dist. LEXIS 17605, at *6.  That is particularly important here because a trier of fact could well reach the opposite conclusion of the district court.  Indeed, the district court failed to consider a number of important facts in reaching its decision.  Among other things, the district court ignored the fact that Sigma and Island negotiated a protective order in the FCA Action prior to the disclosure of the most sensitive trade secrets, precisely to

29

protect Sigma's trade secrets from disclosure.  Further, Island disclosed Sigma's trade secrets in violation of the protective order and then ignored "Sigma's repeated requests to mark the documents 'confidential' to restrict their disclosure . . . ."  Complaint, RE 37-1, Page ID # 788-789.  Sigma had little reason to seek the entry of an additional protective order under the circumstances.  Further, as noted above, a misappropriator cannot disclose a trade secret and then use that disclosure to protect itself from liability.  Island should not be rewarded for its decision to violate a protective order or its refusal to correct its error after the fact.

The district court also failed to appreciate that Island disclosed Sigma's trade secrets directly to Sigma's competitors.  At that point, the damage to Sigma was already done.  Sigma's competitors could not be made to forget what they had seen.

The district court's reliance on Sigma's failure to file a motion for sanctions is also misplaced.  The filing of a motion for sanctions would not have remedied the wrongful disclosure.  Further, the FCA Action was a complex litigation.  Sigma may well have had tactical reasons not to file a motion for sanctions.  The district could erred in not viewing the facts in the light most favorable to Sigma, which it was required to do in the context of a Rule 12(b)(6) motion.  A trier of fact could well conclude that Sigma acted reasonably under the circumstances and the district court should not have found otherwise.

In any event, the Rule 12(b)(6) standard is clear: Sigma need only allege a plausible claim at this stage of the proceedings and a court is "required to 'construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff.'" *Bickerstaff*, 830 F.3d at 396 (quoting *Directv, Inc.*, 487 F.3d at 476). Sigma's complaint easily meets this standard.

If, for some reason, the Court concludes that Sigma did not meet the Rule 12(b)(6) standard, it should remand this case to allow Sigma to file an amended complaint. In such an amended complaint, Sigma would allege that it has an Employee Manual of January 2009, which informs Sigma employees that they have a duty to maintain confidentiality, even after they leave the employment of Sigma. Sigma would further allege that the Employee Manual provides that no one is permitted to remove, transmit or make copies of any Sigma records, reports or documents without management's prior written approval. In relevant part, Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that "[t]he court should freely give leave [to amend] when justice so requires." Such is the case here.

In sum, the issue of whether Sigma sufficiently alleged reasonable measures to protect its trade secrets is governed by three principles: (1) the factual allegations of Sigma's complaint should be accepted as true, construed in a light most favorable to Sigma, and with reasonable inferences drawn in favor of Sigma,

*Bickerstaff*, 830 F.3d at 396; (2) "[t]here is not a single definition for what constitutes 'reasonable measures[,]'" *Shanshan Du*, 570 F. App'x  at 500; and (3) "except where the evidentiary showing of reasonable efforts could not conceivably support a judgment in favor of the plaintiff, the reasonableness of the efforts is a question for the trier of fact[,]" *Neimi*, 543 F.3d at 303.  When these principles are applied to the allegations of Sigma's complaint, it is apparent that the Rule 12(b)(6) dismissal of Sigma's complaint should be reversed.

**C.    The General Bar On Indemnification Claims In False Claims Act Cases Does Not Apply In Circumstances Where Damages Are Sought Against Parties Who Did Not Violate The False Claims Act**

Various courts have held that there is no right to indemnification in the False Claims Act and, as a result, there is no right to assert state law counterclaims in a False Claims Act that, if prevailed upon, would have the same result.  This Court has not yet ruled on this issue.  In the case under review, the district court held that Sigma's efforts to claim the full amount of damages awarded against it in the False Claims Act action filed by Island was an "impermissible end-run" around the bar to indemnification in the False Claims Act.  Order Granting Motion to Dismiss, RE 43, Page ID # 820.  Because this issue arose in the context of a Rule 12(b)(6) dismissal, the Court should review this issue *de novo*.

As an initial matter, the district court's decision is premature.  The judgment against Sigma in the FCA Action remains under review by the Ninth Circuit.

Sigma should be entitled to recover the millions of dollars of legal fees that it has incurred if the judgment in the FCA Action is overturned.

Further, the judgment of the district court should be reversed for another simple reason: the general bar on indemnification claims in False Claims Act cases does not apply in circumstances where damages are sought against parties who did *not* violate the False Claims Act.

Damages in a DTSA case include (1) "damages for actual loss caused by the misappropriation of the trade secret;" (2) "damages for any unjust enrichment caused by the misappropriation of the trade secret that is not addressed in computing damages for actual loss;" (3) "in lieu of damages measured by any other methods, the damages caused by the misappropriation measured by imposition of liability for a reasonable royalty for the misappropriator's unauthorized disclosure or use of the trade secret;" (4) if the trade secret was "willfully and maliciously misappropriated, . . . exemplary damages in an amount not more than 2 times the amount of the damages" otherwise awarded. 18 U.S.C. § 1836(b)(3)(B), (C). Damages under the NTSS and TUTSA are calculated in a similar fashion. N.J. Stat. 56:15-4; Tenn. Code Ann. § 47-25-1704.

By its complaint, Sigma sought damages for a variety of actual damages it suffered as a result of Island's wrongful conduct and Sanders' wrongful conduct, including damages that are completely unrelated to the damages awarded in the

FCA Action. These damages included the judgment amount awarded against it in the False Claims Act action: $24,256,638.09 in damages and $1,824,145.00 in penalties. Complaint, RE 37-1, Page ID # 786. Sigma claims these amounts as damages because Island and Sanders used the trade secrets it stole from Sigma (specifically, the supplier lists) to develop and maintain the False Claims Act lawsuit they filed against Sigma. *Id.* at Page ID # 785.

A leading case addressing indemnification and the False Claims Act is *Mortgages, Inc. v. United States District Court*, 934 F.2d 209 (9th Cir. 1991). In that case, a mortgage lending company and its president (collectively, "Mortgages") filed a complaint under the False Claims Act against defendants who allegedly made false statements in their applications for loans insured by the Department of Housing and Urban Development, after reaching their own settlement with the government concerning the same activity. *Id.* at 210–211. The defendants then filed third-party complaints against Mortgages, alleging numerous state law claims and seeking as relief "full indemnification and/or contribution from Mortgages against any recovery or judgment in favor of the United States in the FCA Action." *Id.* at 211. Mortgages subsequently filed a petition for writ of mandamus, arguing that it should not be required to answer the third-party complaints filed against it. *Id.* The Ninth Circuit granted the petition and agreed with Mortgages: "For the reasons set out below, we conclude that there is no right

34

of indemnity or contribution *among participants in a scheme* to defraud the government in violation of the FCA." *Id.* at 212 (emphasis added).  The Ninth Circuit then explained why.

"Where one or more persons have committed a fraud upon the government in violation of the FCA, each is joint and severally liable for the treble damages and statutory penalty." *Id.* (citations omitted).  "A defendant held liable under a federal statute has a right to contribution or indemnification *from another who has also violated the statute* only if such right arises (1) through the affirmative creation of a right of action by Congress, either expressly or implicitly, or (2) via the power of the courts to formulate federal common law." *Id.* (emphasis added) (citations omitted).

In addressing these questions, the *Mortgages* Court examined *Texas Indus., v. Radcliff Materials*, 451 U.S. 630 (1981), where the Supreme Court examined whether a right of contribution existed under the Sherman Act in a case where "defendants in a federal antitrust action sought contribution from other participants in a conspiracy to violate antitrust laws." *Mortgages*, 934 F.2d at 213.  The fact that the Supreme Court found no right of contribution in the antitrust laws informed the *Mortgages* Court's own conclusion that no similar right existed in the False Claims Act. *Id.*  The *Mortgages* Court also found no right under federal common law. *Id.* at 213–14.

The holding of *Mortgages* is not isolated.  Numerous courts have held that contribution or indemnification is not available in the False Claims Act.  *See United States ex rel. Mikes v. Straus*, 931 F. Supp. 248, 261 (S.D.N.Y. 1996) (discussing "a counterclaim against the relator for the relator's alleged participation in the submission of false claims in violation of the FCA":  "Any attempt by defendants to offset their FCA liability by seeking contribution or indemnification from the relator is futile"); *United States ex rel. Miller v. Harbert*, 505 F. Supp. 2d 20, 25 (D.D.C. 2007) (discussing *United States ex rel. Rodriquez*, 74 F. Supp. 763 (S.D.N.Y. 1947), an early case barring indemnification in a False Claims Act case:  "In *Rodriquez*, the counterclaim was premised on the allegation that the *qui tam* relator himself was responsible for the fraud and had led the defendant astray, so it was in the nature of an action for indemnification"); *United States ex rel. Battiata v. Puchalski*, 906 F. Supp. 2d 451, 453–61 (D.S.C. 2012) (dismissing defendants' counterclaims against a relator for damages sustained by the United States that defendants say "were caused in whole or in part by the negligence, culpable conduct, and incorrect or improper billing and coding" done by the relator); *United States ex rel. Scott v. Metro. Health Corp.*, No. 1:02-CV-485, 2005 U.S. Dist. LEXIS 35591, at *39–40 (W.D. Mich. Dec. 13, 2005) (holding that "claims that Defendants might have (for setoff, contribution and the like) against Plaintiff for legal violations by her which gave rise to the False

Claims Act allegations" are barred but "this does not mean (and cannot mean if justice is to be done) that *qui tam* assets are protected from seizure for unrelated claims arising after the *qui tam* events (in this case litigation abuses)").

The general bar against indemnification in False Claims Act actions should not apply here because Island and Sanders did not participate in the activity involved in Island's False Claims Act complaint: Island and Sanders did not import welded outlets from China, and, as a result, neither Island nor Sanders failed to pay antidumping duties purportedly due on such imports.

By its complaint, Sigma seeks damages against Island and Sanders that includes (but is not limited to) the full amount of damages that Sigma must pay if the False Claims Act judgment is sustained on appeal. If liability were established in this trade-secrets case, the award of such damages would be appropriate under both federal and state law because the False Claims Act judgment would be "actual loss caused by the misappropriation of the trade secret" within the meaning of 18 U.S.C. § 1836(b)(3)(B) (the DTSA) as well as the similar standards contained in the state-law NTSS and TUTSA.

The policy considerations supporting the general bar on indemnification in False Claims Act cases is grounded in the idea that such indemnification would be a "strong deterrent" to the institution of a False Claims Act case by a relator: "Fear of a counterclaim, based on the charge that the informer himself was solely

involved and that the defendants relied upon his judgment and integrity, would in the average case discourage the institution of qui tam actions." *Rodriquez*, 74 F. Supp. at 769. The Ninth Circuit in *Mortgages* recognized this principle when it stated that "[t]he FCA is in no way intended to ameliorate the liability of wrongdoers by providing defendants with a remedy against a qui tam plaintiff with 'unclean hands.'" 934 F.2d at 213.

These policy considerations do not exist here. Awarding theft-of-trade-secrets damages against Island and Sanders in this case will not deter potential relators in other cases from filing False Claims Act cases. The general bar on indemnification in False Claims Act cases is focused solely on damages associated with the relator's own involvement in fraudulent activity against the federal government. That bar has nothing to do with tortious activity on the part of the relator that is separate-and-apart from False Claims Act activity. *Accord United States ex rel. Madden v. General Dynamics Corp.*, 4 F.3d 827, 831 (9th Cir. 1993) ("we believe that some mechanism must be permitted ***to [e]nsure that relators do not engage in wrongful conduct*** in order to create the circumstances for qui tam suits . . . .") (emphasis added).

A theft of trade secrets is clearly "wrongful conduct" and actual damages (at a minimum) should be awarded if liability in a theft-of-trade-secrets case is established. Such an award would not be "indemnification" in a False Claims Act

case, as that term has traditionally been used.  The district court erred in holding

otherwise, and its judgment should accordingly be reversed.

Finally, it should not escape notice that Sigma is claiming a variety of

damages in this case, not just damages associated with the False Claims Act case.

These damages include, but are not limited to, damages flowing from competitive

disadvantages that Sigma now faces as well as damages to Sigma's relationships

with its suppliers and customers.  Complaint, RE 37-1, Page ID # 786.  Thus, even

if this Court were to agree that damages associated with the False Claims Act case

are indemnification claims that should be barred, this Court should nonetheless

allow this case to proceed so that Sigma may seek recovery of these other types of

damages.

## CONCLUSION

For these reasons, this Court should reverse the judgment of the district court

and remand this matter to the district court for further proceedings.

Respectfully submitted,


/s E. Franklin Childress, Jr.
E. Franklin Childress, Jr. (TN Bar #7040)
Kristine L. Roberts (TN Bar #23856)
BAKER, DONELSON, BEARMAN, CALDWELL, AND BERKOWITZ, PC
165 Madison Avenue, Suite. 2000
Memphis, TN 38103

(901) 526-2000
fchildress@bakerdonelson.com
klroberts@bakerdonelson.com

Roberto J. Kampfner
WHITE & CASE LLP
555 South Flower Street
Suite 2700
Los Angeles, CA  90071-2433
rkampfner@whitecase.com

Lucius B. Lau
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC  20005
(202) 626-3696
alau@whitecase.com

*Attorneys for Sigma Corporation*

June 8, 2023

## CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 9,572 words.

2. This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft® Word 2016 in 14-point Times New Roman type style.

/s E. Franklin Childress, Jr.
Attorney for Defendant-Appellant
Sigma Corporation

## CERTIFICATE OF SERVICE

I hereby certify that on June 8, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s E. Franklin Childress, Jr.
Attorney for Defendant-Appellant
Sigma Corporation

**ADDENDUM**

| Record Entry No. | Document Description | Page ID Range |
|---|---|---|
| RE 1 | Sigma's Motion to Withdraw the Reference and Defendant's Response in Opposition to Sigma's Motion to Withdraw the Reference | Page ID # 1–28 |
| RE 23 | Order Granting Sigma's Motion to Withdraw the Reference | Page ID # 74–75 |
| RE 33-1 | Defendants' Motion to Dismiss | Page ID # 114–703 |
| RE 33-2 | Defendants' Reply to Sigma's Response to Defendants' Motion to Dismiss | Page ID # 704–712 |
| RE 34-1 | Sigma's Reply in Opposition to Defendants' Motion to Dismiss | Page ID # 713–745 |
| RE 37-1 | Sigma's Complaint | Page ID # 784–802 |
| RE 43 | Order Granting Defendants' Motion to Dismiss | Page ID # 814–826 |
| RE 44 | Judgment | Page ID # 827 |
| RE 46 | Notice of Appeal | Page ID # 828–830 |
| Bankr. RE 1 | Island's Petition in Bankruptcy Court, *In re Island Industries, Inc.*, Case No. 22-20380-L (Bankr. W.D. Tenn.). | Page ID # 1–10 |
| Adv. RE 1 | Sigma's Theft-of-Trade-Secrets Complaint in Adversary Proceeding in Island Bankruptcy, *Sigma Corporation v. Island Industries, Inc.*, Case No. 22-00050 (Bankr. W.D. Tenn.). | Page ID # 1–19 |